**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0398-24

HUDSON RIVER ASSOCIATES,
LLC, and 225 RIVER ROAD
DFT 2017, LLC,

     Plaintiffs-Appellants,

v.

THE PROMENADE AT
EDGEWATER CONDOMINIUM
ASSOCIATION, INC., BOARD
OF TRUSTEES, and L. PERES
& ASSOCIATES, INC.,

     Defendants-Respondents.
_____

RREEF AMERICA REIT II
CORP. HH,

     Intervenor-Respondent,

v.

HUDSON RIVER ASSOCIATES,
LLC, and 225 RIVER ROAD
DFT 2017, LLC,

     Defendants-Appellants.

_____

EDGEWATER PROMENADE
123, INC. and RIVERVIEW AT
CITY PLACE, INC.,

     Plaintiffs/Intervenors-
     Respondents,

v.

THE PROMENADE AT
EDGEWATER CONDOMINIUM
ASSOCIATION, INC., BOARD
OF TRUSTEES, and L. PERES
& ASSOCIATIONS, INC.,

     Defendants-Respondents.

_____

Argued September 16, 2025 – Decided November 17, 2025

Before Judges Currier, Smith, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0394-24.

Stephen P. Sinisi argued the cause for appellants (Law Offices of Stephen P. Sinisi, LLC, attorneys; Stephen P. Sinisi, on the briefs).

Justin D. Santagata argued the cause for respondents The Promenade at Edgewater Condominium Association, Inc., Board of Trustees, and L. Peres & Associates, Inc. (Cooper Levenson, attorneys; Justin D. Santagata and Samantha Carmody, on the brief).

2

A-0398-24

Thomas A. Buonocore argued the cause for respondent RREEF America REIT II Corp. HH (Law Offices of Thomas A. Buonocore, PC, attorneys; Thomas A. Buonocore and Mark E. Thompson, on the brief).

PER CURIAM

Plaintiffs appeal the trial court's order denying their motion to vacate an arbitration award, and the trial court's order granting defendants' motion to confirm the award. Plaintiffs were developers of a complex real estate project that had substantial commercial, residential, and parking components to it. Plaintiffs became embroiled with defendants in a dispute over parking spaces defendants lost due to ongoing construction. Key issues in the dispute included: identifying the number of parking spaces required to replace those lost during construction; identifying the party responsible for ongoing maintenance of those spaces; and identifying the duration of the parking space maintenance obligation.

The parties first mediated the disputed issues, but when that failed, they elected to go to arbitration. A retired Superior Court judge served as the mediator and the arbitrator. After the arbitration commenced, the parties reached a settlement agreement. However, they later disputed a term in the agreement and mutually chose to return to the arbitrator for an interpretation. The arbitrator considered the parties' dueling interpretations and made an award,

3

ordering that plaintiffs be responsible for providing defendants forty-five parking spaces and maintaining those spaces indefinitely. Plaintiff moved to vacate the award, alleging the arbitrator exceeded their powers. The trial court denied the motion to vacate, finding the arbitrator did not exceed their powers, and that the issue was within the scope of the arbitration.

We affirm for the reasons which follow.

## I.

As background, the multi-use complex known as City Place at the Promenade in Edgewater ("the complex") consists of two residential condominium high-rise buildings, a hotel, future development units, a ferry dock, a commercial retail unit, and common areas. The parties to this appeal own the following interests in the complex:

- Plaintiffs Hudson River Associates, LLC and 225 River Road DFT 2017, LLC (collectively, "plaintiffs"), own the future development units ("FDUs").

  o FDU A is a parking deck.

  o FDU B is an office building.

A-0398-24

- Defendant The Promenade at Edgewater Condominium Association (the "Master Association" or "defendant") manages the common areas of the complex.

- Defendant L. Peres & Associates, Inc. ("defendant") managed the Master Association at the time of the initial litigation.

- Intervenor RREEF America REIT II Corp. HH ("RREEF") owns the commercial retail units.

- Intervenors Edgewater Promenade 123, Inc. and Riverview at City Place, Inc. (collectively, the "residential associations") each govern one of the high-rise condominiums.

This litigation began as plaintiffs' declaratory judgment action. Plaintiffs sought to determine the amount of common expenses and parking spaces they owed to the Master Association. The parties unsuccessfully attempted mediation, and finally, on July 29, 2022, they settled, creating a settlement term sheet ("STS") outlining their respective rights and obligations regarding the common expenses and the parking spaces.

Section four of the STS, subsections (a) and (b), spelled out plaintiffs' express obligations regarding parking in FDU A:

> (a) Plaintiffs covenant to immediately make and thereafter keep the [FDU A] Parking Deck compliant

A-0398-24

with all applicable laws and provide for all maintenance and upkeep associated therewith at its sole cost and expense.

(b) Plaintiffs shall, within 30 days of the Approval of the Settlement Agreement, execute a <u>permanent easement providing the Association with unencumbered full and complete access to the parking deck</u> located on Future Development Unit A ("Parking Deck") for parking by the Association and its guests and invitees . . . . The [p]laintiffs shall thereafter covenant to keep and maintain the Parking Deck in compliance with all applicable laws and as a usable parking area for the Association and its guests and invitees <u>and shall continue to be solely responsible for the property and casualty insurance, maintenance, snow removal, upkeep, and repair of the Parking Deck.</u>

[(emphasis added).]

Section nine of the STS stated that, "[a]ll terms of the Master Declaration and By-Laws shall continue to be in full force and effect other than as expressly amended by the provisions of this [STS]." Section ten of the STS stated that disputes related to the interpretation or enforcement of the STS would be submitted by the parties to mediation, then, if that failed, to arbitration by a mutually agreed upon retired Superior Court judge. Although the STS contemplated a more formal agreement to be consummated later, the STS specifically stated that it was "binding upon approval" by the parties, effective July 29, 2022. All parties executed the STS.

6

The parties reached an impasse over the interpretation of certain STS terms. Relevant to this appeal, the parties could not agree whether the permanent easement for parking and maintenance of the parking space would exist in perpetuity or whether it would be extinguished or merged somehow. After unsuccessful mediation, the parties submitted the matter for a "binding and final" arbitration to the arbitrator as required under STS section ten.

The arbitrator directed the parties to submit a statement of issues. Plaintiffs' submission asked the arbitrator to decide if the permanent easement would terminate upon completion of development of FDU B. It read as follows:

> Since Section 8.04.03 of the Master Declaration mandates that the [FDU] A Parking Deck parking spaces are to become Common Elements, did the parties also agree that the plaintiff's obligation to provide a permanent easement to the said Parking Deck and to maintain the Parking Deck, in Section 4 of the [STS], would terminate upon completion of the future additional development of [FDU] B, when the Parking Deck parking spaces would become a Common Element and part of the Condominium Parking Facilities, pursuant to Master Declaration Section 8.04.03 so that the easement would merge into ownership by the Condominium unit owners?

Defendants also asked the arbitrator to determine the meaning of the term permanent easement in the STS. To narrow the question, the arbitrator then asked the parties whether

A-0398-24

> [there is] any indication in the [STS] that upon the further development of FDU B, that the easement granted by [p]laintiffs to the parking deck will be extinguished and the [defendants] will become responsible to maintain the garage?

Defendants took the position that the STS contained no indication that the easement was to be extinguished. Plaintiffs answered differently, acknowledging that there was "no explicit statement in the STS that . . . the easement to the parking deck will be extinguished," but arguing that the Master Declaration "remained in full force." Plaintiffs insisted that the permanent easement would eventually be extinguished, since the Master Declaration ultimately required the parking spaces to become common elements.

On September 25, 2023, the arbitrator issued an award, rejecting plaintiffs' arguments and adopting defendants' interpretation of the STS. Reading the plain language of the STS, the arbitrator found the easement was "permanent without any qualification or limitation." The arbitrator also found that the STS did not contain language calling for the transfer of parking deck ownership nor its corresponding maintenance obligation to defendants at any time. Observing that the parties were "sophisticated business entities," the arbitrator found that if plaintiffs' intent was to eventually transfer the obligations surrounding the

A-0398-24

parking deck to the Association, they would have expressed that intention in writing in the STS. The arbitrator stated

> [i]n hindsight, while [p]laintiffs may regret their decision to permanently undertake the responsibility for the existing Parking Deck, their unexpressed intent to foist that responsibility on [d]efendant must fail when the STS clearly evinces a contrary intent and understanding.

On November 27, 2023, the arbitrator issued a supplemental award in response to plaintiffs' request to clarify the initial award and in response to defendants' request for attorney's fees. Treating plaintiffs' application as a motion for reconsideration, the arbitrator found plaintiffs did not establish any basis to change, correct or modify the initial award. Moving to attorney's fees, which were contemplated in section ten of the STS, the arbitrator performed an analysis of defendants' fee application, and, applying our well-settled jurisprudence and corresponding Rules of Professional Conduct, awarded fees in the amount of $101,583.

On January 19, 2024, plaintiffs moved to vacate the arbitration award, arguing the arbitrator exceeded their authority under N.J.S.A. 2A:23B-23(a)(4)[1] by ignoring Section 8.04.03 of the Master Declaration and Section 3 of the Third

---

[1] New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36.

Amendment to the Master Declaration. Plaintiffs contended that the arbitrator's rejection of their argument and subsequent award meant the arbitrator improperly rewrote or invalidated these two provisions. In March 2024, defendants answered and cross-moved to confirm the award. Intervenor RREEF moved to confirm the award, and intervenors Edgewater Promenade and Riverview moved to vacate it.

On August 30, 2024, the trial court issued an order confirming the award. In its oral statement of reasons, the court stated that it did not:

> agree with plaintiffs that [the arbitrator] exceeded [their] powers by ignoring a reference in the STS to Section 8.03.04 of the [M]aster [D]eclaration, and by invalidating the [T]hird [A]mendment to the [M]aster [D]eclaration. The [c]ourt does not find that [the arbitrator] exceeded [their] statutory powers or those conferred upon him by virtue of the parties' agreements. Rather, [the court found the] award did fall within the scope of [the arbitrator's] charge. In fact, the [c]ourt does not find that any of the factors in N.J.S.A. 2A:23B-23 are satisfied to allow for the arbitration award to be vacated.

The trial court entered an order confirming the arbitration award and denying plaintiffs' motion to vacate it. Plaintiffs appeal, contending that the trial court committed error by confirming the award.

A-0398-24

## II.

We are mindful of "New Jersey's 'strong preference for judicial confirmation of arbitration awards.'"  Sanjuan v. Sch. Dist. of W. New York, 256 N.J. 369, 381 (2024) (quoting Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).  "[A] private sector arbitration award should not be vacated absent 'fraud, corruption, or similar wrongdoing on the part of the arbitrators.'"  Rappaport v. Pasternak, 260 N.J. 230, 250 (2025) (quoting Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 548-49 (1992) (Wilentz, C.J., concurring)).  That said, we review de novo a trial court's legal conclusions to affirm or vacate arbitration awards.  Sanjuan, 256 N.J. at 381 (citing Yarborough v. State Operated Sch. Dist. of Newark, 455 N.J. Super 136, 139 (App. Div. 2018)).

## III.

Plaintiffs' argument on appeal is that the arbitrator exceeded their authority.  They contend the arbitrator overstepped in two ways:  first, by ignoring the provisions of the project's governing documents, including the Master Declaration and its amendments; and second, by deciding an issue not properly before them.

11

The New Jersey Arbitration Act ("NJAA") governs judicial review of arbitration awards. N.J.S.A. 2A:23B-1 to -36. Section 23B-23(a)(4) states: "Upon the filing of a summary action with the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if: an arbitrator exceeded the arbitrator's powers . . . ." Looking to our jurisprudence on the subject, we note that an arbitrator's authority is circumscribed "by the agreement of the parties and an arbitrator may not exceed [that] scope . . . ." Kimm v. Blisset, LLC, 388 N.J. Super. 14, 25 (App. Div. 2006).

The record shows the arbitrator read the plain language of the STS and concluded that plaintiffs promised to maintain the parking spaces permanently. The arbitrator found that the term "permanent easement" was not qualified by any other plain language in the STS. The arbitrator saw no need to go beyond the STS's clear terms to arrive at an interpretation. The arbitrator found that if plaintiffs wanted to impose a time limit on its parking space maintenance obligation, they could have clearly expressed that intent in writing. The STS was the document that the parties asked the arbitrator to interpret, and the arbitrator did so. Plaintiffs' dissatisfaction with the award, without more, does

A-0398-24

not warrant its vacation.  We conclude that the trial court committed no error when it determined the arbitrator did not exceed their authority.

Plaintiffs next contend that the arbitrator decided an issue not properly before them.  We disagree, as the record shows that the question of how to define the term "permanent easement" was placed squarely before the arbitrator.

The parties agreed the arbitrator would interpret any disputed STS provisions which they could not resolve via arbitration.  The arbitrator was charged with reconciling the parties' disputed interpretation of "permanent easement."  Each party presented the arbitrator with detailed submissions articulating their arguments for interpreting "permanent easement."  Plaintiffs' third question in its issue statement to the arbitrator essentially asked, did the parties agree that plaintiffs' obligation to provide a permanent parking easement would terminate upon completion of development at FDU B?  After a thorough consideration of the voluminous record and the parties' arguments, including plaintiffs' assertions about the role of Section 8.04.03 of the Master Declaration and Section 3 of the Third Amendment to the Master Declaration in interpreting the STS, the arbitrator's simple answer was, "no."

"An award may not be vacated or modified simply because a court disagrees with the arbitrator's interpretation of the law or view of the facts;

A-0398-24

unless the [New Jersey Arbitration Act's] specific requirements for vacating or modifying an award are met, the award must be confirmed." Rappaport, 260 N.J. at 251. We conclude that the trial court did not err on these grounds. We discern no basis to disturb the trial court's order confirming the award.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0398-24